IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

Jesus Emmanuel Jehovah, )
a/k/a Robert Gabriel Love, )
a/k/a Gabriel Alexander Antonio, )
    Plaintiff, )
 )
 )    1:12cv87 (JCC/IDD)
v. )    Appeal Nos. 12-7797 & 12-8079
 )
Harold W. Clarke, et al., )
    Defendants. )

MEMORANDUM OPINION

    Jesus Emmanuel Jehovah, a Virginia inmate proceeding pro se, has filed a civil rights action, pursuant to 42 U.S.C. § 1983, alleging claims of interference with his right to practice his religion and deliberate indifference to his serious medical needs. During pendency of this action, plaintiff has appealed several of the Court's orders to the United States Court of Appeals for the Fourth Circuit, including orders dismissing some of his claims, denying preliminary injunctive relief, denying plaintiff's motion to change venue, declining to file photographs under seal, and denying in part a motion to make corrections of an order pursuant to Fed. R. Civ. P. 60(a). The Fourth Circuit consolidated plaintiff's appeals and dismissed all for lack of jurisdiction except for this Court's denial of preliminary injunctive relief, which it affirmed. Jehovah v. Commonwealth, R. No. 12-7797 (4th Cir. Apr. 15, 2013), ECF No. 92. This action now is proceeding on plaintiff's claims that defendants violated his right to freely practice his religion pursuant to the Free Exercise Clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA").

    Defendants have filed a joint Motion for Summary Judgment, and plaintiff was given the opportunity to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir.

1975). Plaintiff has responded; accordingly, this matter is ripe for disposition. Also before the Court are plaintiff's motions for discovery and for reconsideration of the Court's May 17, 2013 Order. For the reasons that follow, defendants' joint Motion for Summary Judgment will be granted, and plaintiff's motions will be denied.

## I. Background

Plaintiff describes himself as "Jewish, Israeli, Italian, Latino, Greek, and other things" and says he is "a citizen of heaven and earth." Am. Compl. ¶ 2, ECF No. 26. Plaintiff explains that his religion requires that he take communion "with unleavened kosher bread, pure red grape wine (an amount equal to about 2-5 fluid ounces) . . . and honey, olive oil, powdered sugar, white sugar, cinnamon, and water, all pure, for dipping/baptizing such bread . . . ." Am. Compl. ¶ 2. He explains that his family "has kept such practice for nearly two thousand (2000) years, and it is not acceptable or permissible for them or him to make physical communion substitutions . . . ." Id.

Plaintiff was permitted to take communion with wine until January 2011, when the Virginia Department of Corrections ("VDOC") amended the relevant operating procedure, OP 841.3, and prohibited wine from religious services in Virginia institutions. Am. Compl. ¶ 19; Mem. Supp. Mot. Summ. J. (hereinafter "Mem.") 3, ECF No. 60. Plaintiff filed several grievances regarding both his inability to take communion with the additional dipping materials and the VDOC's decision to substitute grape juice for wine at services in institutions. Am. Compl. ¶¶ 19-21. Plaintiff claims that VDOC "has no legitimate or actual penological interest" in prohibiting him taking communion as his religions dictates and that the grape juice substitute is unacceptable. Id. ¶¶ 22, 25.

VDOC amended OP 841.3 again in January 2012 to permit inmates who take communion to dip their bread in wine but still prohibited inmates from drinking the wine. Id. ¶ 26, Mem. 3.

2

After the Amended Complaint was been filed, VDOC amended OP 841.3 a third time to prohibit inmates from taking any wine in any form during communion. Robinson Aff. ¶ 7. Plaintiff asserts that OP 841.3 as amended violates his right to freely practice his religion under both the First Amendment Free Exercise Clause and RLUIPA. Am. Compl. ¶ 27.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence . . . create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v.

3

Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

### III. Analysis

### A. RLUIPA

Under RLUIPA, the government is prohibited from acting in ways that impose a "substantial burden on the religious exercise of a person residing in or confined to an institution," unless the government demonstrates that the imposition of that burden furthers a "compelling governmental interest" by the least restrictive means. 42 U.S.C. § 2000cc-1(a)(1)–(2). A plaintiff asserting a claim under RLUIPA bears the initial burden of showing by a preponderance of the evidence that: (1) he or she seeks to engage in an exercise of religion; and (2) the challenged practice substantially burdens that exercise. 42 U.S.C. § 2000cc-2(b).

1. Substantial Burden

Although RLUIPA does not define the term "substantial burden," the United States Court of Appeals for the Fourth Circuit has held that, under RLUIPA, a "substantial burden on religious exercise occurs when a state or local government, through act or omission, 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (quoting Thomas, 450 U.S. at 718). "On the opposite end of the spectrum . . . a government action or regulation does not rise to the level of a substantial burden on religious exercise if it merely prevents the adherent from either enjoying some benefit that is not otherwise generally available or acting in a way that is not otherwise generally allowed." Adkins v. Kaspar, 393 F.3d 559, 570 (5th Cir. 2004). "Religious exercise"

4

in this context includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).

Two recent cases from the Fourth Circuit illustrate a plaintiff's responsibility with respect to demonstrating a substantial burden. In Couch v. Jabe, the plaintiff "testified that the primary religious texts of Islam command that he grow a beard and that the refusal to maintain a beard is a sin comparable in severity to eating pork." 679 F.3d 197, 200 (4th Cir. 2012). VDOC's grooming policy prohibited inmates from growing beards and enforced this rule by placing a noncompliant inmate in a program that "restricted or limited [the inmate's] access to personal property, movement rights, the right to eat and associate with others, recreation time, and visitation time." Id. at 199. The Fourth Circuit concluded that VDOC's grooming policy and enforcement mechanism, "fit squarely within the accepted definition of 'substantial burden'" because it placed substantial pressure on the plaintiff to modify his behavior and violate his beliefs. Id. at 200–01 (citing Warsoldier v. Woodford, 418 F.3d 989, 995–96 (9th Cir.2005)).

In Krieger v. Brown, the Fourth Circuit declined to find an inmate had demonstrated a substantial burden where prison officials denied "his requests for an 'outdoor worship circle' and a certain 'sacred items' related to his religious practice of Asatru." No. 107576, 2012 WL 5447889, at *1 (4th Cir. Nov. 8, 2012). The plaintiff "asserted that deprivation of the outdoor worship circle would require him to pray indoors, and that the 'Blot' ceremony is 'best performed outdoors.'" Id. at *3 (emphasis added). The Fourth Circuit concluded that the mere denial of the optimal manner for performing the "Blot" ceremony could not demonstrate a substantial burden where the plaintiff "failed to offer any explanation regarding the reason why indoor worship would compromise his religious beliefs." Id. Similarly, the inmate failed to demonstrate a substantial burden with respect to the denial of additional sacred items simply by

5

the "blanket assertion" that "the sacred items were 'necessary' to perform 'well-established rituals.'" Id. at *4. The Fourth Circuit noted that plaintiff "did not identify those rituals, or explain why the absence of the sacred items had an impact on the rituals and violated his beliefs." Id.

Here, assuming without deciding that plaintiff's religious beliefs are sincerely held, VDOC's policy does not violate plaintiff's rights under RLUIPA because plaintiff has failed to demonstrate a substantial burden on his religious exercise simply because he cannot take communion in the manner he desires, with wine and dipping materials. Plaintiff makes blanket assertions that wine is necessary for him to take communion but fails to sufficiently explain why drinking wine instead of juice is necessary and not just his preferred method, and how the substitution has an impact on the ritual. He states that "[c]ommunion substitutes, deductions, and deviations are unacceptable, impermissible, and dishonor Christ and God. Christ directs and instructed communion be done with baptized bread and wine, not bread and unfermented grape juice." Am. Compl. ¶ 25(a). He also states that "Christ's Communion was, is, and will always be with pure red grape wine, which symbolizes and spiritually becomes His Blood[,]" id. at ¶ 25, but plaintiff does not explain why grape juice cannot symbolize the same beyond making conclusory statements to that effect. Plaintiff states several times that taking communion with wine is "Communion according to Plaintiff, Christ God, or Plaintiff's Family[,]" id. at n. 8, indicating his strong preference for taking communion in a certain manner but failing to demonstrate how the act of taking communion is burdened by drinking grape juice during the ritual instead of wine.

As to the dipping materials plaintiff wishes to have during communion, he describes the meaning of "baptized bread" and the need for the materials:

> The Body Christ gave and gives was not this unbaptized Body, but his Baptized Body, for John the Baptist baptized Christ in the Jordan River, and at Christ's Communion the bread is dipped in the dipping materials to symbolize the baptism of his body. This is Plaintiff's Communion, and he seeks and desires to have and practice such, whether in the VDOC or elsewhere. This aspect of baptizing the bread in dipping materials for communion has not been and is not taught or practiced in the world yet because it has been preserved and reserved for Christ and God to make such known and to teach and institute such not as the communion known and practiced in the world, but as communion brought down from heaven for persons Christic.

Id. at n.7. Plaintiff fails to demonstrate that the dipping materials are necessary to his taking communion. He concedes that the method "is not practiced in the world" and fails to show why taking communion with bread only is insufficient.

2. Compelling Interest

Even if plaintiff had demonstrated a substantial burden on his religious exercise, defendants have established that OP 841.3 furthers a compelling state interest in maintaining security and safety of inmates and staff. Defendant A. David Robinson, Chief of Corrections Operation at VDOC, states in a sworn affidavit that allowing any form of alcohol into an institution poses a risk of it "being mishandled by staff or not properly disposed of" after use, such as at communion. Robinson Aff. ¶¶ 7–8. Additionally, he explains that many inmates suffer from alcohol addiction, and "[m]ost Alcoholics Anonymous (AA) programs advise that no alcohol should be taken by alcoholics, as even the smallest amount could trigger behaviors that start the addiction cycle." Id. at ¶ 8. These factors led VDOC to amend its O.P. 841.3 effective February 1, 2013 to prohibit inmates from taking any wine in any form during communion. Plaintiff failed to establish that O.P. 841.3 substantially burdens his religious exercise, but even if he had, defendants have demonstrated that the policy furthers a compelling state interest. See Estep v. O'Dea, No. 95-5993, 1996 WL 185767, at *1 (6th Cir. Apr. 17, 1996). Therefore, defendants' joint Motion for Summary Judgment will be granted as to the RLUIPA claim.

## B. Free Exercise

Similar to RLUIPA, for plaintiff to survive summary judgment for his First Amendment claim, plaintiff must demonstrate defendants' conduct substantially burdens his religious exercise. Whitehouse, 2011 WL 5843622, at *5. "RLUIPA provides considerably more protection for an inmate's religious exercise than does the Free Exercise Clause of the Constitution of the United States." Id. at *5 (citing Lovelace, 472 F.3d at 186). Thus, "[w]here an inmate has not put forth sufficient evidence under RLUIPA to demonstrate a substantial burden on his religious exercise, his claim fails under the Free Exercise Clause of the First Amendment as well." Van Wyhe, 581 F.3d at 657-58 (citing Patel v. U.S. Bureau of Prisons, 515 F.3d 807, 813 (8th Cir.2008)). Accordingly, defendants' joint Motion for Summary Judgment will be granted as to the Free Exercise claim.

## IV. Other Pending Motions

### A. Discovery

Because defendants' joint Motion for Summary Judgment will be granted, plaintiff's "Request for Leave to File Admissions and Responses of Defendants," construed as a request for discovery, Motion for Abstention, Renewed Motion for Venue Change, and Motion to Impose Sanctions on Defendants will be denied, as moot.

### B. Motion to Reconsider 60(b)

Also before the Court is plaintiff's motion, pursuant to Fed. R. Civ. P. 60(b), to reconsider its May 17, 2013 Order, which denied various motions of plaintiff's. Relief under Rule 60(b) is available for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . . , misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has

been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Plaintiff appears to invoke subsection (6) of the foregoing rule, but nothing in his Motion offers a "reason that justifies relief" from the Order as required by Rule 60(b)(6). Plaintiff merely repeats his requests for discovery that were denied by the May 17, 2013 Order. Accordingly, because the Motion does not offer any new information or reason to justify relief, plaintiff's Motion to Reconsider the May 17 Order will be denied for the reasons stated in that Order.

## V. Conclusion

For the above-stated reasons, defendants' joint Motion for Summary Judgment will be granted, and plaintiff's motion for reconsideration will be denied. Plaintiff's other pending motions will be denied, as moot. An appropriate Order shall issue.

Entered this 20th day of August 2013.

/s/
James C. Cacheris
United States District Judge

Alexandria, Virginia