UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JESUS EMMANUEL JEHOVAH,
    *a.k.a.* Robert Gabriel Love,
    *a.k.a.*, Gabriel Alexander Antonio,
        *Plaintiff,*

    v.

HAROLD W. CLARKE, *et al.*
        *Defendants.*

1:12-cv-87-MSN-LRV

## MEMORANDUM OPINION

This is a civil rights action filed under 42 U.S.C. § 1983 by plaintiff Jesus Emmanuel Jehovah, who is proceeding *pro se* but was formerly represented by counsel in this action. Plaintiff's claims relate to his alleged inability to fully exercise his religious beliefs while he was a state prisoner in the custody of the Virginia Department of Corrections ("VDOC"). *See* ECF 281. The matter is before the Court upon several motions: a Motion for Summary Judgment (ECF 499) and Partial Motion to Dismiss (ECF 582) filed by defendants Harold W. Clarke and A. David Robinson, and a Letter Motion to Reconsider, Amend, and/or Vacate the Court's August 3, 2021 Order (ECF 581) filed by plaintiff. For the reasons explained below, defendants' motions will be granted, plaintiff's motion will be denied, and this action will be dismissed with prejudice.

**I.    Procedural History**

This action's procedural history is complex and lengthy. Consequently, the Court will provide only a broad overview of the action's major milestones, spending additional time to discuss filings and decisions where appropriate and relevant to the motions now under consideration.

Acting *pro se*, plaintiff filed this action in January 2012, alleging that officials at Sussex I State Prison violated his rights by failing to allow him to take communion or observe the Sabbath and by forcing him to share a cell with a non-Christian. ECF 1, 26. He additionally claimed that prison officials had been deliberately indifferent to his serious medical needs. *Id.* On September 27, 2012, the Hon. James C. Cacheris dismissed all of plaintiff's claims except for his denial of communion claim. *See* ECF 28. On August 20, 2013, Judge Cacheris granted a motion for summary judgment regarding the communion claim. *See* ECF 124-25.

On July 9, 2015, the United States Court of Appeals for the Fourth Circuit issued an opinion reversing Judge Cacheris's decisions to dismiss several of plaintiff's claims *sua sponte* and grant defendants' motion for summary judgment. *See* ECF 159, 162. Defendants then sought certiorari review of the Fourth Circuit's decision, a request that was denied on May 2, 2016. *See* ECF 223 (order dated September 20, 2017, describing this action's procedural history to that date). The Fourth Circuit itself denied rehearing on June 20, 2016. *Id.*

On September 21, 2017, this action was reassigned to the Hon. Liam O'Grady, who appointed attorney Philip John Harvey to represent plaintiff. *See* ECF 229. Counsel later filed what is now the operative pleading in this action, plaintiff's Fourth Amended Complaint ("FAC").[1] *See* ECF 281. Despite being represented by counsel, plaintiff continued to file submissions *pro se*, and those submissions were routinely at odds with those filed by counsel. Judge O'Grady summarized the situation in an Order dated February 28, 2019:

> This matter comes before the Court on receipt of "Plaintiff's *Pro Se* Memorandum of Law Proving Beyond All Doubt That His State Claims Are Based on Self-Executing Constitutional Provisions, and Request to Certify Question if Necessary." Dkts. 292 & 293. This filing is the latest example of Plaintiff's repeated filings of motions

---

[1] Plaintiff has continued to file amended pleadings since attorney Harvey's withdrawal from this action. *See* ECF 564, 576. Because plaintiff did not seek leave to file these amended pleadings, as required by the Federal Rules of Civil Procedure, the Court does not consider them to have superseded the FAC.

2

> *pro se* in this matter despite the Court's appointment of Mr. Harvey to represent him. Plaintiff's random *pro se* filings are disruptive and prejudicial to Defendants' attempts to timely file responses to pleadings as they are now faced with multiple pleadings from different sources filed at unscheduled times. Plaintiff's filings have also disrupted the Court's administration and adjudication of this case. Plaintiff's *pro se* filings are undoubtedly disruptive to his own counsel's attempts to represent Plaintiff effectively. The Court has had enough of Plaintiff's attempts to disrupt this case through these dual filings. The Court appointed Mr. Harvey to advise and represent Plaintiff moving forward in this case using very limited funds of the Court believing it would further the orderly administration of justice and properly adjustive Plaintiff's claims. The Court was wrong and is unwilling to further fund Mr. Harvey's representation given these abuses, except to permit the completion of Plaintiff's response to the Defendants' Motion to Dismiss . . . . If Mr. Harvey wishes to continue to represent Mr. Jehovah beyond that time, he must do so on a pro bono basis and the Court will strike any pleadings filed by Plaintiff *pro se*.

ECF 297. Mr. Harvey did not continue to represent plaintiff and withdrew from the action with the Court's permission. ECF 284-85.

On October 21, 2020, defendants Clarke and Robinson filed the Motion for Summary Judgment now pending before the Court. ECF 499. Later, acting *pro se* once more, plaintiff requested that several of his claims be dismissed without prejudice (ECF 558) and filed a Motion for Summary Judgment of his own (ECF 570). Plaintiff's Motion for Summary Judgment was purportedly supported by thousands of pages of documents that plaintiff submitted in at least fifteen batches. *See* ECF 456, 457, 465, 467, 476, 477, 483, 491, 492, 494, 495, 503, 529, 554, 561, 562. On August 3, 2021, however, the Court struck plaintiff's Motion for Summary Judgment, observing that it violated numerous Local Rules in that it "double[d] an already-expanded page limit by using single-spacing, eight-point font, and margins of roughly three-quarters of an inch." ECF 574. The Court instructed plaintiff to file a renewed motion no later than September 15, 2021.

3

*Id.* On August 22, 2021, the Court granted plaintiff's request for dismissal without prejudice of several of his pending claims. ECF 577.

After the issuance of the Court's August 3, 2021 Order, plaintiff filed a letter motion seeking reconsideration of the decision to strike his Motion for Summary Judgment. ECF 581. He additionally sought and received an extension of time to refile his dispositive motion and to oppose the Motion for Summary Judgment filed by defendants. *See* ECF 579 (extending deadline to file motion for summary judgment and to oppose defendants' motion to October 15, 2021). On October 19, 2021, observing that plaintiff had been released from prison, defendants filed a Partial Motion to Dismiss, arguing that two of plaintiff's three remaining claims had become moot. ECF 582-83. Although plaintiff has filed an Opposition to defendants' Partial Motion to Dismiss, *see* ECF 586, he has failed to file a renewed motion for summary judgment or oppose defendants' pending Motion for Summary Judgment.

Plaintiff's failure is not for lack of opportunity or notice that this case is ongoing; on October 13, 2023, plaintiff responded to a Court order—issued after this action was reassigned to the undersigned—directing him to indicate whether he wished to continue to prosecute his claims. ECF 588. In his response, plaintiff assured the Court that he would "respond further in 6-8 weeks after recovering from [] surgery." *Id.* at 3. Now, roughly four months after plaintiff's self-imposed deadline, the Court still has not received any new submission. It therefore concludes that plaintiff is not owed any additional time and will assess the currently pending motions below.

## II.     Motion for Reconsideration

First at issue is plaintiff's letter motion seeking reconsideration of the Court's decision to strike his Motion for Summary Judgment. ECF 581. In support of the Motion, plaintiff argued that

4

he "lack[ed] the resources, access, lined paper, ruler, and other means needed to … comply with [this Court's Local Rules]" and thus requests the Court reinstate his submission. *Id.* at 1.

The Court declines to overturn Judge O'Grady's decision to strike plaintiff's Motion because, contrary to his apparent belief, plaintiff's *pro se* status does not excuse him from following the Court's Local Rules. Indeed, the Supreme Court has made clear that it "ha[s] never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." *McNeil v. United States*, 508 U.S. 106, 113 (1993). Plaintiff's Motion for Summary Judgment was just one example of his failure to abide by the rules and norms of litigating in federal court in this action, and this Court declines to allow the pattern to continue. It will therefore deny plaintiff's motion seeking reconsideration.

### III.     Defendants' Partial Motion to Dismiss

Following plaintiff's voluntary dismissal of several of his claims, only three grounds for relief remain pending in this action: Claims I, II, and V as articulated in the FAC. For context, in Claim II, plaintiff alleges a violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA") based on his alleged denial of communion wine. *See* ECF 583 at 1; ECF 586 at 1 (confirming the subject of plaintiff's remaining claims). In Claim V, plaintiff alleges a violation of his First Amendment right to exercise his religion on the same factual basis. *Id.* Finally, in Claim I, plaintiff seeks a declaratory judgment based on the facts underpinning Claims II and V. *Id.* In their Partial Motion to Dismiss, defendants assert that plaintiff's release from custody has rendered Claims I and II moot. ECF 583.

Defendants are correct. "[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive or declaratory relief" regarding prison conditions. *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009). Plaintiff devotes almost ten pages of

argument to the proposition that RLUIPA allows for individual capacity monetary damages and that his claims are therefore not moot, *see* ECF 586 at 2-10, but his position is unpersuasive. Indeed, the Fourth Circuit has opined that a "plaintiff's only potential remedies under RLUIPA are equitable." *See Wall v. Wade*, 741 F.3d 492, 496 n.5 (4th Cir. 2014). Undeterred, however, plaintiff directs the Court's attention to the Supreme Court's 2020 decision in *Tanzin v. Tanvir*, 592 U.S. 43 (2020). But *Tanzin* is at best tangentially relevant to this action. That case focused on receipt of damages under the Religious Freedom Restoration Act ("RFRA") and expressly differentiated itself from another case, *Sossamon v. Texas*, 563 U.S. 277 (2011), which found that a state's acceptance of federal funding *did not* mean it waived sovereign immunity to suits for damages under RLUIPA. *See Tanzin*, 592 U.S. at 51-52. As the Fifth Circuit aptly stated in a recent decision, *Tanzin* "addresses a different law that was enacted under a separate Congressional power with concerns not relevant to RLUIPA." *See Landor v. La. Dep't of Corrs. and Pub. Safety*, 82 F.4th 337, 344 (5th Cir. 2023) (cleaned up) (finding that a plaintiff cannot recover monetary damages against the defendants in their individual capacities under RLUIPA).

The Court finds the Fifth Circuit's decision persuasive and declines to deviate from its reasoning. Consequently, it will grant defendants' Partial Motion to Dismiss.

### IV.     Defendants' Motion for Summary Judgment

Having concluded that Claims I and II must be dismissed as moot, only Claim V remains pending in this action. Defendants' Motion for Summary Judgment convinces the Court that the claim is without merit.

#### A.     Compilation of the Factual Record

Before the Court recites the statement of facts on which defendants' Motion for Summary Judgment will be assessed, it pauses to address the statement's compilation and the sources of

evidence on which it is based. This Court's Local Rules and the Federal Rules of Civil Procedure require a party moving for summary judgment to offer a statement of facts believed to be undisputed and to cite to specific evidence in the record to support each offered fact. *See* Fed. R. Civ. P. 56(c)(1); Local Civil Rule 56(B). Defendants complied with these requirements in their motion. *See* ECF 500 at 3-7.

As the nonmovant, it was plaintiff's responsibility to identify the facts about which he contends there is a dispute and to cite the parts of the record to support *his* position. *See* Fed. R. Civ. P. 56(c)(1); Local Civil Rule 56(B). In failing to file any opposition, plaintiff has, of course, not abided by these rules. When a party fails to respond to a motion for summary judgment, as plaintiff has here, the motion can be decided solely on the basis of the movant's submissions. *See* Fed. R. Civ. P. 56(c)(3) (in deciding motion for summary judgment, "[t]he court need consider only the cited materials . . . ."); Local Civil Rule 56(B) ("In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."). Thus, to the extent plaintiff believes the Court must scour the record in search of a material dispute of fact, he is mistaken. *See, e.g.*, *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."). Plaintiff's status as a *pro se* litigant does not entitle him to lenience in this respect. *See, e.g.*, *Thompson v. Wiedemann*, No. 3:16cv834-HEH, 2018 WL 1568681, at *3 (E.D. Va. Mar. 30, 2018) (stating in context of pro se prisoner-initiated suit that a plaintiff's "failure to respond to the Motion for

Summary Judgment permits the Court to rely solely on the submissions of Defendants in deciding [the motion]").[2]

The Court additionally observes that plaintiff's failure to oppose defendants' Motion for Summary Judgment is not for lack of opportunity. Plaintiff's deadline to file an opposition to the motion was extended from November 30, 2020, to December 18, 2020 (*see* ECF 518), extended again to March 15, 2021 (*see* ECF 527), extended a third time to April 30, 2021 (*see* ECF 545), extended a fourth time to May 30, 2021 (*see* ECF 552), extended a fifth time to August 30, 2021 (*see* ECF 569), and extended a sixth time to October 15, 2021 (*see* ECF 579). In his final request for an extension, plaintiff stated that he was "scheduled to be released on 9/7/21" and that his release would "help expedite this case." ECF 578. Plaintiff had no apparent difficulty filing his opposition to defendants' Partial Motion to Dismiss (*see* ECF 586) and indicated to the Court in a letter dated September 28, 2023, that he would "respond further in 6-8 weeks after recovering from [] surgery" (*see* ECF 588). He has not done so, and the Court concludes that he has waived his opportunity to file an opposition.

Consistent with the above, defendants' factual statement is undisputed and is supplemented by additional undisputed allegations from the FAC for context and readability.

### B.      Statement of Undisputed Facts

At all times relevant to this action, plaintiff was a Virginia state prisoner in the custody of the VDOC, which was run in part by defendants: defendant Clarke served as Director, and defendant Robinson served as Chief of Corrections Operations. ECF 500-2 ("Clarke Aff.") at ¶ 1; ECF 500-1 ("Robinson Aff.") at ¶ 1. Plaintiff asserts that his religious beliefs—which the FAC

---

[2] Nor can the Court consider the unverified allegations in plaintiff's FAC as "facts" at the summary judgment stage. *See, e.g.*, *Berry v. Atlantic Coast Line R.R. Co.*, 273 F.2d 572, 582 (4th Cir. 1960) ("The allegations of plaintiff's unverified complaint will not suffice" to overcome a motion for summary judgment).

describes nebulously as "given to [him] by his Father and [] taught by his Father" and a product of plaintiff's "Jewish, Israeli, Italian, Latino, Greek, Polish, Irish and other" heritage—require that he partake in communion by consuming red wine and a host of other accoutrements, including honey, olive oil, powdered sugar, white sugar, cinnamon, and water. FAC at ¶ 25. Plaintiff further claims that he lost his ability to fully participate in communion in January 2011, when VDOC officials issued a memorandum amending VDOC Operating Procedure ("OP") 841.3 to prohibit inmates from consuming wine with communion. FAC ¶ 29. Under the revised OP, only clergy attending religious services were able to consume wine on prison grounds, and they could consume only one ounce at a time. *Id.* at n.4.

Prison administrators decided to prohibit inmate consumption of communion wine for several reasons, including substance abuse potential, security concerns, and the administrative burden in carving out exceptions to the general policy. It is undisputed that a significant portion of VDOC inmates have drug-related convictions, a history of substance abuse, or a history of committing crimes to support a substance abuse habit. ECF 368-1 ("Clarke Resp. to Plaintiff's First Set of Interrogatories") at 1-2. Offenders with substance use challenges may lie or otherwise attempt to obtain the substances to which they are addicted. *Id.* at 2-3. Restricting the presence of alcohol on premises to a single ounce of wine for pre-screened, trained clergy members limited the risk of harm or setbacks in inmates' sobriety. *Id.* at 3. Finally, carving out exceptions for inmates who do not have a history of substance abuse would be "an unworkable system." ECF 371-1 ("Robinson Resp. to Plaintiff's First Set of Interrogatories") at 3. Not only is it impossible for VDOC to confirm a particular inmate's substance or alcohol abuse history, but inmates granted access to alcohol may share their access with other inmates. It would also be "extremely

9

burdensome" on a facility to execute multiple, unique exceptions to a generally-applicable policy, costing significant staff time and resources. *Id.* at 3-4.

Before deciding to ban communion wine for offenders, VDOC officials contacted their counterparts in other states to determine if a consensus practice existed. *Id.* at 4. Most states indicated that they had a similar policy to the one ultimately implemented by the VDOC—namely, a policy through which clergy, but not inmates, could consume communion wine. *Id.*

### C. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." *Variety Stores v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018). Once the moving party has met its burden to show that it is entitled to judgment as a matter of law, the nonmoving party "must show that there is a genuine dispute of material fact for trial … by offering sufficient proof in the form of admissible evidence." *Id.* (quoting *Guessous v. Fairview Prop. Inv'rs.*, LLC, 828 F.3d 208, 216 (4th Cir. 2016)). In evaluating a motion for summary judgment, a district court must consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

### D. Analysis

Claim V, the only claim remaining in this action, arises under the First Amendment's Free Exercise Clause. "In order to state a claim for violation of rights secured by the Free Exercise Clause, an inmate, as a threshold matter, must demonstrate that: (1) he holds a sincere religious

belief; and (2) a prison practice or policy places a substantial burden on his ability to practice his religion." *Wilcox v. Brown*, 877 F.3d 161, 168 (4th Cir. 2017). If that threshold showing is made, the prisoner must then show that the practice or regulation impacting his ability to exercise his religious beliefs is not "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). *Turner* employs a four-factor test to determine the reasonableness of a prison regulation. It requires consideration of:

1. whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

2. whether there are alternative means of exercising the right that remain open to prison inmates;

3. the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and

4. whether there are ready alternatives suggesting that the regulation in question is "an exaggerated response" to prison concerns.

*Id.* at 89-91. Importantly, under this framework, "[t]he burden … is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

There is no real dispute regarding the sincerity of plaintiff's religious beliefs or the impact of his inability to obtain communion wine. Plaintiff therefore satisfies his threshold showing for Claim V; however, in failing to file any opposition, plaintiff has failed to show that the ban on communion wine was unreasonable. Pursuant to *Overton*, this was his burden, and the Court could therefore end its analysis here. *Cf. Andrews v. Comm'r, Me. Dep't of Corr.*, No. CIV.10-134-B-H, 2010 WL 2244086, at *5 (D. Me. May 28, 2010) (granting unopposed summary judgment motion in First Amendment action observing that, "by his silence, Andrews has certainly not carried his burden of disproving the validity of the two challenged policies").

11

But if this were not enough, the record at summary judgment clearly supports the reasonableness of the VDOC regulation in question. First, there is a valid, rational connection between the VDOC's ban on wine and the governmental interest put forward to justify it. The Fourth Circuit held as much when this action was before it in 2015. *See Jehovah v. Clarke*, 798 F.3d 169, 178 (4th Cir. 2015) (stating that "[p]romoting the inmates' safety and health is a legitimate concern" and observing that "restricting inmate wine consumption is a rational approach to preventing alcohol misuse and abuse").

The Court next finds that plaintiff had alternative means of exercising his religious beliefs. As an initial matter, a court considering this factor is not instructed to determine "whether [an inmate has] been denied specific religious accommodations." *See Baranowski v. Hart*, 486 F.3d 112, 121 (5th Cir. 2007). Rather, "[t]he pertinent question is … whether … the prison affords the inmate[] opportunities to exercise [his] faith." *Id.* Applying this standard in the context of a Muslim inmate's First Amendment claim, the Fourth Circuit recently stated, "So this is not about whether Firewalker-Fields had the opportunity to engage in Friday Prayer on his terms, but rather whether he could generally engage in worship." *See Firewalker-Fields v. Lee*, 58 F.4th 104, 117 (4th Cir. 2023). In this light, the Court concludes that, despite lacking access to wine, plaintiff retained the ability to participate in communion because he could be present with a clergy member and consume grape or other fruit juice while the clergy member consumed wine. This was clearly an alternative, if imperfect, opportunity for plaintiff to exercise his religious beliefs. *See Jehovah*, 798 F.3d at 178 ("Although the ban at issue prohibits drinking wine at communion, it does not prevent inmates from engaging in other aspects of communion, nor does it affect other religious practices."); *cf. Firewalker-Fields*, 58 F.4th at 117 (finding for the government with respect to

second *Turner* factor, specifically observing that a plaintiff "could invite an imam to visit him during lockdown on Fridays to engage in prayer—even if it were at 12:30 and not noon").

The third *Turner* factor also cuts in favor of the defendants. As to this element, the Fourth Circuit previously stated that "a jury could find that the prison population would not be endangered by a single inmate with no history of alcohol abuse consuming a small amount of wine in this setting." *Jehovah*, 798 F.3d at 178. The panel conceded, however, that at that point in the litigation, "the record [was] largely silent" with respect to the impact of a communion wine ban on inmates, guards, and prison resources. *Id.* The record now contains additional evidence not previously submitted to the Court, including information regarding the significant number of VDOC inmates who were convicted of controlled-substance-related offenses and who had a history of substance use or abuse. The record additionally shows that, in a "recent twelve-month period," VDOC officials issued over 4,000 charges related to the possession of intoxicants or drug paraphernalia or being under the influence of intoxicants or drugs. ECF 500 at 18. The Court thus finds persuasive defendants' assertion that "[l]ifting the restriction on communion wine necessarily brings with it an increased risk that offenders will abuse communion wine—either by attempting to take possession of the alcohol or making false statements in order to obtain it," *id.*, and notes the clear risk such access to wine poses to inmates who would benefit from complete abstinence from alcohol. In sum, then, the Court concludes that the evidence now before it sufficiently addresses the Fourth Circuit's hypothetical notion that allowing communion wine would affect only "a single inmate with no history of alcohol abuse." *Jehovah* at 178.

Finally, the Court concludes that the fourth *Turner* factor—whether ready alternatives to the policy in question exist—also cuts in favor of defendants. Importantly, this factor does not ask a district court to determine if defendants have implemented the least-restrictive alternative;

13

instead, a court should ask "whether the prisoner has pointed to some obvious regulatory alternative that fully accommodates the asserted right while not imposing more than a de minimis cost to the valid penological goal." *Overton*, 539 U.S. at 136. Also important—particularly here, where the plaintiff has not opposed defendants' Motion for Summary Judgment—is that it is the prisoner's burden to suggest reasonable alternatives, not defendants' burden "to imagine them." *Firewalker-Fields* at 118 (citing *Lane v. Griffin*, 834 F.2d 403, 407 n.5 (4th Cir. 1987) ("It is improper to place the burden on a prison official to show that no reasonable method exists by which religious rights can be accommodated without creating bona fide security problems.")).

Here, even disregarding plaintiff's failure to proffer "easy and obvious" alternatives in opposition to defendants' Motion, the legal standard does not favor plaintiff's position. Indeed, there is evidence in the record that defendants polled departments of correction across the nation and found that the consensus approach matched their own—that is, to allow only clergy to consume communion wine on prison grounds. This is important because "[t]he Constitution does not mandate a lowest common denominator security standard, whereby a practice permitted at one penal institution must be permitted at all institutions." *Turner*, 482 U.S. at 95 n.*. The fact that most of the polled departments of corrections had a policy at least as restrictive as VDOC's is persuasive evidence that "easy and obvious" alternatives to the ban on communion wine do not exist, or at least did not at the time in question.

For these reasons, the Court concludes that the *Turner* factors all resolve in favor of defendants and that the VDOC policy disallowing inmates from consuming wine at communion was reasonable and therefore did not infringe on the plaintiff's First Amendment rights.

\*   \*   \*

## V. Conclusion

For the reasons stated above, through an order that will issue alongside this Memorandum Opinion, defendants' Partial Motion to Dismiss and Motion for Summary Judgment will be granted, and plaintiff's Letter Motion for Reconsideration will be denied.

/s/
Michael S. Nachmanoff
United States District Judge

March 29, 2024
Alexandria, Virginia